**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

KATHY BROWNE,

    Plaintiff,

    v.                                                            Case No. 2:23-cv-00164-GSL-AZ

ANDREA CIOBANU,

    Defendant.

## OPINION AND ORDER

    Kathy Browne, proceeding pro se, is suing her former lawyer, Andrea Ciobanu. Among other things, Browne alleges that Ciobanu improperly forced her into a settlement agreement. [DE 6]. Ciobanu, through counsel, moved to dismiss for failure to state a claim. [DE 14]. Although fully briefed, the Motion to Dismiss was never decided because Browne improperly moved to amend her complaint several times, causing the Court to terminate Ciobanu's motion until Browne's amendment-related filings were resolved. [DE 56]. A magistrate judge dismissed Browne's filings and ordered her to file a single, rules-compliant motion for leave to amend. [DE 77]. She did. [DE 79]. In response, Ciobanu requested that the motion to dismiss be reinstated. [DE 84]. The Court did so in its previous order.

    This matter is now before the Court on Defendant's Motion to Dismiss [DE 14] and Plaintiff's Motion for Leave to Amend [DE 79]. For the following reasons, Defendant's Motion to Dismiss [DE 14] is granted in full, and Plaintiff's Motion for Leave to Amend [DE 79] is denied as futile. All other pending, unresolved motions are denied as moot, and the case is dismissed, in its entirety, with prejudice.

## Background

### I.    Prior Litigation

In February 2020, Browne hired Ciobanu to aid her in filing a lawsuit against Jennifer Waldo, Anna Hearn (Waldo's attorney), Sergeant Stephen Kobitz of the Valparaiso Police Department, and the City of Valparaiso.[1] *Browne v. Waldo, et al.*, Case No. 2:20-cv-00196-JD (N.D. Ind.), ECF No. 1 (May 13, 2020). Two years later, counsel for Browne and Hearn filed a notice of settlement between the two parties. ECF No. 138 (Feb. 4, 2022). The Court directed the parties to file dismissal papers by April 5, 2022. ECF No. 141 (Feb. 4, 2022). In late March, Ciobanu's motion to withdraw as Browne's attorney was granted three days after it was filed. ECF No. 149 (Mar. 25, 2022). Browne, now proceeding pro se, signed the settlement agreement on March 24, 2022, and Hearn signed it on March 28, 2022. *See* ECF No. 296 (Dec. 6, 2022). Per the Agreement, Hearn sent the settlement check to Ciobanu, even though Ciobanu no longer represented Browne.[2] In the following weeks, Hearn moved to enforce the Agreement as to Browne. ECF No. 164 (Apr. 7, 2022); ECF No. 195 (May 5, 2022). Browne made several filings in opposition arguing, among other things, that the Agreement was unenforceable because Ciobanu concealed evidence from and made misrepresentations to Browne that induced her into signing the settlement agreement. *See* ECF No. 177 (Apr. 22, 2022); ECF No. 211 (May 24, 2022); ECF No. 289 (Nov. 23, 2022). The Court, having determined that nothing precluded

---

[1] The Court will refer to that matter as the Waldo/Hearn Litigation. The substantive issues in that case, and any preceding matters involving any of those parties, *are not* before this Court. However, the Court provides some background of that litigation, since Defendant's conduct is the basis for this litigation. As a result, the Court will be citing to that docket. To avoid confusion, the Court will cite to the Waldo/Hearn Litigation docket by using ECF, *e.g.*, ECF No. 1. Citations to this docket will use the Court's standard convention, *e.g.*, [DE 1].

[2] Ciobanu tried to distribute the settlement proceeds to Browne. ECF No. 192 (May 3, 2022). When Ciobanu was unable to get the funds to Browne, she held them in trust. ECF No. 301 (Dec. 22, 2022). Finally, Ciobanu impleaded the settlement proceeds with the Court. ECF No. 302 (Dec. 22, 2022); ECF No. 311 (Jan. 10, 2023); ECF No. 320 (Jan. 20, 2023).

enforcement of the agreement, granted Hearn's motion and dismissed Browne's claims against Hearn. ECF No. 296 (Dec. 6 , 2022). With this resolved, Ciobanu filed an attorney lien on the settlement amount for fees and costs that Browne owed her. ECF Nos. 301–302; ECF No. 303 (Dec. 28, 2022). Browne opposed, reasserting the arguments made in opposition to Hearn's Motion to Enforce and adding that Ciobanu was unjustly enriched, overcharged Browne, and failed to stop a subpoena. ECF No. 305 (Dec. 28, 2022); ECF No. 319 (Jan. 19, 2023). The Court sided with Ciobanu, whose attorney fees were taken from the settlement amount with the remainder disbursed to Browne. ECF No. 335 (Feb. 23, 2023). Eventually, Browne settled with Waldo, the final remaining party, and the matter was dismissed.[3] ECF No. 469 (Mar. 3, 2024); ECF No. 470 (Mar. 3, 2024).

## II.    Instant Litigation

This brings us to the matter at hand. Browne filed this action against Ciobanu in May 2023, while the Waldo/Hearn Litigation was still pending.[4] [DE 1]. Three weeks later, before Defendant responded, Browne filed an Amended Complaint, which is currently operative. [DE 6]. Here, Browne alleges that Ciobanu's representation was deficient, and that Ciobanu intentionally misrepresented certain matters in order to induce Browne into settling the case. [*Id.*]. Browne's claims against Ciobanu arise under the following state law theories: negligence, misrepresentation, malicious prosecution, fraud, fraud in the inducement, intentional infliction of

---

[3] Browne appealed. ECF No. 474 (Mar. 29, 2024). Ultimately, the Seventh Circuit affirmed the enforcement of the settlement agreement. ECF No. 484 (Dec. 2, 2024).

[4] This is not the first time Browne has sued Ciobanu. In December 2022, Browne, pro se, sued the attorneys involved in the Waldo/Hearn Litigation, including Ciobanu. *See Browne v. Hearn, et al.*, 2:22-cv-00368-JVB-APR. Not long after filing, Browne dismissed the case.

emotional distress, unjust enrichment, and Indiana's crime victim statute. Browne asserts that she has suffered over $85,000 in damages. [*Id.*].

On August 21, 2023, Ciobanu moved to dismiss for failure to state a claim. [DE 14]. In addition to her response brief, Browne made additional filings. [DE 17]; [DE 19]; [DE 20]; [DE 21]. In light of the additional filings, Ciobanu requested additional time to file her reply. [DE 18]. Browne opposed this.[5] [DE 25]. After filing her reply brief, Ciobanu moved to strike portions of two Browne filings that appeared to be her response briefs. [DE 28]; [DE 27]. The motions to strike, which were later granted, sought to remove content from the response briefs that were improperly seeking to amend the complaint. [DE 27]; [DE 77].

From late September 2023 to March 2024, Browne's filing continued, mirroring the above pattern, i.e., each time Ciobanu filed something, Browne filed multiple responses. *See, e.g.*, [DE 33] (Def.'s Mot. to Strike) *and* [DE 35] (Pl.'s Mot. to Correct Error) *and* [DE 36] (Pl.'s Opp. Mot. to Strike). Browne also exhibited a habit of filing certain documents piecemeal. For example, she simultaneously filed with her amended complaint two supplements to that complaint. *See* [DE 6] (Am. Compl.) *and* [DE 7] (Suppl. Am. Compl.) *and* [DE 8] (Additional Suppl. Am. Compl.). She also moved at least five times to amend or supplement the amended complaint. *See, e.g.*, [DE 47], [DE 49]. As a result of these motions, Judge Moody terminated Ciobanu's motion to dismiss, leaving the possibility for it to be reinstated pending the resolution of Browne's motions to amend. [DE 56]. The case was transferred to the undersigned on March 25, 2024. [DE 58]. Following the transfer, Browne made several more filings. *See, e.g.*, [DE 61] (Pl.'s Resp. Order Reassigning Case) *and* [DE 75] (Pl.'s Mot. for Clerk's Entry of Default).

---

[5] Then-Magistrate Judge Kolar overruled this objection on September 15, 2023. [DE 26].

On May 30, 2024, Magistrate Judge Martin issued an order addressing nearly all of the 17 motions and filings pending on the docket. [DE 77]. He denied Browne's motions to amend, ordering her to file a motion for leave to amend in accordance with federal and local rules. [*Id.*]. She did. [DE 79]. Magistrate Judge Martin also cautioned Plaintiff that "[c]ontinued irrelevant and excessive filings will be stricken, and may result in sanctions." [DE 77]. Notwithstanding, Plaintiff filed several more motions, including: another pleading-related motion ([DE 87]); another motion for entry of default ([DE 90]); and a motion for default judgment ([DE 94]). These caused this Court to stay the case. [DE 95]. In its recent order lifting the stay, the Court reinstated Defendant's Motion to Dismiss [DE 14], since Magistrate Judge Martin's Order [DE 77] resolved the pending motions that triggered the termination. Defendant's Motion to Dismiss [DE 14] and Plaintiff's Motion for Leave to Amend [DE 79] are fully briefed and ripe for decision by the Court.

<u>**Legal Standard**</u>

**I.       12(b)(6) Motion to Dismiss**

In response to a complaint, a party may file a motion to dismiss the action for its failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint will survive a 12(b)(6) motion if it contains allegations that state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Under this plausibility standard, a court accepts "the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*

*v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). After removing legal conclusions and conclusory allegations, the court must determine "whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 681). To be plausible, the remaining factual allegations must "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

## <u>Discussion</u>

Before addressing the briefing, the Court must address two anomalies of the Amended Complaint. First, each distinct claim alleged includes the following: "The plaintiff incorporates by reference the preceding paragraphs of this complaint as fully set forth herein. Pursuant to the federal notice pleading standard, this complaint contains a factual allegations section, pleaded with sufficient factual matter, which demonstrates Mr. Back is entitled to relief." *See, e.g.*, [DE 6, Pages 19, 24, 26, 28]. As far as the Court can tell, Mr. Back is nowhere to be found in this litigation or the prior litigation. Second, certain references in the Amended Complaint lead nowhere. For example, several allegations relate to the deposition of Brian Oller, but there is no explanation of who that is or the significance of that deposition. *See, e.g.*, [DE 6, Page 11, ¶ 36] *and* [DE 6, Pages 21, 30]. The same is true for several exhibits cited in the Amended Complaint. Many allegations cite to exhibits that are not included in the attachment to the Amended Complaint, e.g., Exhibits J, P, and S. Moreover, the attachment itself is confusing. For instance, here is the order and labels of the attached exhibits: G, Q, V, G, A, A, and A. The simultaneously filed amendments and supplements do nothing more to clear this up. [DE 7]; [DE 8].

Notwithstanding these two confusions, the Court understands that "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*,

551 U.S. 89, 94 (2007). With that in mind, the Court (1) proceeded under the assumption that Plaintiff, not "Mr. Back," was claiming entitlement to relief; and (2) the Court did its best to discern whether any of the exhibits were part of the complaint or necessary to it.

Finally, Plaintiff filed two responses to Defendant's Motion to Dismiss. Though not required to do so, the Court read those together as one response, excepting the stricken material, to ensure all of Plaintiff's arguments against dismissal were considered.

## I.    Collateral Estoppel

Defendant argues that Plaintiff's claims are barred by the doctrine of collateral estoppel.[6] Also known as issue preclusion, the doctrine forbids any "'subsequent re-litigation of the *same fact or issue* where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit.'" *Miller v. Patel*, 212 N.E.3d 639, 646 (Ind. 2023) (quoting *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993)) (emphasis added). Collateral estoppel aims to "relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *United States v. Mendoza*, 464 U.S. 154, 158 (1984) (quotation omitted). The doctrine achieves these ends by its instruction that "'once an issue [or fact] is . . . determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000) (quotation omitted).

In Indiana, collateral estoppel requires "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party . . .

---

[6] "The court may decide issue preclusion at this motion to dismiss stage, albeit construing the well-pleaded allegations in the light most favorable to [the plaintiff]." *Jacobs v. Thor Motor Coach, Inc.*, 474 F.Supp.3d 987, 994 (N.D. Ind. July 23, 2020) (citations omitted).

in the prior action." *Miller*, 212 N.E.2d at 646 (internal citation and quotation marks omitted). On top of these elements, Indiana courts also consider " (a) 'whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue,' and (b) 'whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.'" *Id.* at 647 (internal citation omitted).

Each of Plaintiff's claims, in some way, seek to either void the Hearn Settlement Agreement, recover the attorney fees that Defendant acquired via a lien on the settlement, or both. The claims rest on some combination of these general allegations: (1) Defendant induced Plaintiff into settling her claims against Hearn, (2) Defendant overcharged Plaintiff, and (3) Defendant provided subpar, if not intentionally destructive, representation. Defendant believes that collateral estoppel applies because the same issues and supporting factual allegations were adjudicated on the merits in the prior litigation when this Court enforced the Hearn Settlement Agreement and granted Defendant's lien in that case. The Court agrees. Both the order enforcing the Hearn Settlement Agreement, and the order granting Defendant's lien are final judgments on the merits in a court of competent jurisdiction. It is clear that in her pleadings here, Plaintiff is recycling the facts and issues from her filings in the prior matter.

For example, the following excerpts are from Plaintiff's opposition to Hearn's motion to enforce the settlement agreement:

- Ciobanu "with[held] relevant documents" from Browne. ECF No. 177, Page 2, ¶ 3 (Apr. 4, 2022);

- Ciobanu made alleged "untrue representation[s]" surrounding text messages between Hearn and Kobitz, and allegedly "helped Ed Clinton conceal Hearn's evidence." ECF No. 211, Pages 3–4, ¶ 1, 8 (May 24, 2022);

- Text messages between Hearn and Kobitz were "relevant evidence" that was "withheld" that "supported Browne's claims." ECF No. 289, Page 1 (Nov. 23, 2022);

- Ciobanu, Hearn, and Clinton "deliberately withheld these documents to deceive [Browne] into settling" and the withholding proved Browne's claims of collusion and coercion with respect to the settlement. *Id.* at Page 2; and

- "The … elements of fraudulent inducement into a settlement agreement are no different from any action on fraud" and the fraud or constructive fraud of Ciobanu precluded enforcement of the settlement agreement. *Id.* at Pages 3–4.

These excerpts are from Plaintiff's opposition to the lien filed by Defendant in the prior matter:

- Ciobanu made misrepresentations to Browne including that "Hearn has immunity" and that Hearn's documents "were not incriminating to her" and that these statements induced Browne into settlement. ECF No. 305 at ¶¶ 5, 21 (Dec. 28, 2022);

- "Ciobanu should not be allowed to enrich herself from concealing evidence, and making misrepresentations to the court, and to her client which lead her to detriment." *Id.* at ¶ 6;

- Ciobanu double-charged for completed work and did not complete certain work that Browne paid her to complete. ECF No. 305, Page 3; ECF 319, Pages 2–3 (Jan. 19, 2023);

- Ciobanu did not "curtail a subpoena for medical records," she filed deficient discovery motions, and she "violated the Indiana Rules of Professional Conduct." ECF No. 319, Pages 3–5.

These are the following portions of Plaintiff's Amended Complaint [DE 6]:

- "On January 27, 2022 Ciobanu advised the plaintiff that Anna Hearn was immune to her claims and Haern's conversations with Kobitz were not incriminating, therefore she should settle." [DE 6, Page 5, ¶ 9].

- "On January 12, 2022 the plaintiff paid Ciobanu in full 8,484.00, a few days later the plaintiff realized invoice #5050 and invoice #5052 were duplicate charges for the depositions she prepaid for on October 12, 2021." [*Id.*, Page 6, ¶ 11].

- "The plaintiff asserts, the settlement agreement initiated by Ciobanu on January 27, 2022 was obtained through Ciobanu's misrepresentations that Anna Hearn was immune to her claims and Anna Hearn conversations with Steve Kobitz were not incriminating 'so she should just settle.'" [*Id.*, Page 6, ¶ 20].

- "Andrea Ciobanu misrepresented to the plaintiff Anna Hearn was immune to her claims and her conversations with Sergeant Kobitz were not incriminating to her." [*Id.*, Page 11, ¶ 39].

- "On January 27, 2022 Andrea Ciobanu misrepresented that Anna Hearn was immune to her claims and Anna Hearn's documents under seal were not incriminating. After making

these misrepresentations to the undersign, Andrea Ciobanu induced the plaintiff into settling her claims for her own financial benefit." [*Id.*, Page 12, ¶ 44].

- "Andrea refused to curtail the subpoena for her medical records to torment the undersign." [*Id.*, Page 37].

These examples, which are a few of many, clearly demonstrate that the facts and issues currently before this Court were already presented to Judge DeGuilio in the prior litigation. Were this Court to allow these claims to proceed, it risks a different determination of those facts and issues. This Court will respect the decisions made by Judge DeGuilio and find that the issues set forth in the Amended Complaint in this matter are barred by the doctrine of collateral estoppel.

## II.    Motion to Dismiss

Even though, as discussed above, the factual allegations of the Amended Complaint were already raised and decided in the prior matter, each of Plaintiff's claims independently fail to state a claim upon which relief can be granted.

### a.    *Negligence (Count One)*

In Count One, Plaintiff alleges that Defendant's representation amounts to legal malpractice, i.e., Defendant was negligent.

In Indiana, a claim for legal malpractice must satisfy four elements: "(1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Shorewood Forest Utilities, Inc. v. Welsh*, 237 N.E.3d 1142, 1147 (Ind. Ct. App. 2024) (citing *Reiswerg v. Statom*, 926 N.E.2d 26, 30 (Ind. 2010)). To establish causation and damages, the plaintiff must demonstrate that "the outcome of the underlying litigation would have been more favorable but for the attorney's negligence." *CRIT Corp. v. Wilkinson*, 92 N.E.3d 662, 669–70 (Ind. Ct. App. 2018) (citation omitted).

Here, there are no issues with the first element. Plaintiff sufficiently pleads that she hired Defendant, an attorney, to represent her in a civil lawsuit. *See, e.g.*, [DE 6, Page 3, ¶ 1]. There are issues with the subsequent elements. Plaintiff alleges that Defendant improperly withdrew from her case, breached the attorney-client privilege, failed to conduct discovery, failed to serve subpoenas, and lied to Plaintiff about the dismissal of certain parties from the matter. Attorney liability "may not be predicated on a claimed violation of a specific professional conduct rule relating to fiduciary duties." *Liggett v. Young*, 877 N.E.2d 178, 183 (Ind. 2007). So, Defendant's withdrawal from the case and her alleged breach of the attorney-client privilege cannot serve as the basis for a legal malpractice claim.[7] As for the other allegations, there are no contentions in the Amended Complaint that the matter would have been more favorable *but for* Defendant's actions. Without alleging how these actions proximately caused her damages, Plaintiff fails to plead facts supporting each of the elements of a claim for legal malpractice.

Therefore, Plaintiff's claim for legal malpractice is dismissed.

### b. *Misrepresentation (Count Two), Fraud (Count Four), and Fraud in the Inducement (Count Five)*

Plaintiff also alleges that Defendant is liable under the following theories: Misrepresentation (Count Two), which the Court interprets as fraudulent misrepresentation; Fraud (Count Four); and Fraud in the Inducement (Count Five). The factual allegations supporting these claims boil down to the following:

- Defendant knowingly misrepresented to Plaintiff that Anna Hearn was immune to certain claims that Plaintiff wanted to bring;

---

[7] The Court notes that in the prior matter, Defendant's request to withdraw was granted. ECF No. 147 (Mar. 22, 2022). In relation to the adjudication of the settlement agreement, Defendant provided emails between herself and Plaintiff to the Court of the prior matter at that Court's request. ECF No. 264 (Oct. 21, 2022) (ordering that Defendant may provide limited communications); ECF No. 270 (Oct. 26, 2022).

- Defendant withheld evidence from Plaintiff, then intentionally misrepresented to Plaintiff that certain discovery, i.e., Anna Hearn's conversations with Sergeant Kobitz, was not helpful to Plaintiff;

- Defendant told Plaintiff that she was not an appellate lawyer; and

- Defendant intentionally undertook these actions to force Plaintiff into settling.

Plaintiff contends that these actions were taken by Defendant in order to induce Plaintiff into signing the settlement agreement.

Plaintiff's fraud-related causes can only succeed if the supporting facts "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Our Circuit describes this higher pleading standard as requiring the "who, what, when, where, and how" of the fraud, in other words, "the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). But a plaintiff providing details in furtherance of fraud allegations does not have unlimited leeway to do so on "information and belief." *Pirelli*, 631 F.3d at 442–43. Generally, fraud cannot be pled based on information and belief, unless (1) the facts constituting the fraud are inaccessible to the plaintiff and (2) the plaintiff provides the grounds for their suspicions. *Id.*

In Indiana, a plaintiff states a claim for fraudulent misrepresentation when it sufficiently alleges that (1) a defendant materially misrepresented a past or existing fact, (2) which was false, (3) with knowledge or reckless ignorance of the falseness, (4) and the plaintiff reliance upon that misrepresentation, (5) proximately caused the plaintiff's injury. *Johnson v. Wysocki*, 990 N.E.2d 456, 460–61 (Ind. 2013). In addition to the foregoing, claims for fraud or fraud in the inducement require an additional element: intent to deceive the plaintiff. *Compare Wysocki*, 990 N.E.2d at 461, *with Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F.Supp.3d 866, 879 (S.D. Ind.

2014) (outlining the elements of fraud under Indiana law), *and Tru-Cal, Inc. v. Conrad Kacsik Instrument Systems, Inc.*, 905 N.E.2d 40, 44–45 (Ind. Ct. App. 2009) (outlining the elements of fraud in the inducement). The difference between fraud and fraud in the inducement is that the latter occurs when a party was induced through fraudulent representations into entering a contract. *See Circle Centre Development Co. v. Y/G Indiana, L.P.*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002). Here, though each of Plaintiff's fraud-related claims are distinct, her factual allegations lack the particularity necessary under Rule 9(b).

Plaintiff's allegations, as summarized above, all share one key deficiency: a failure to allege how the information provided by Defendant were facts that were false. The Court, making all *reasonable* inferences in favor of Plaintiff, is unable to discern how Defendant's alleged statements are anything other than her legal opinion. Indiana does not allow fraud claims to be based on statements of opinion. *See Guenin v. Sendra Corp.*, 700 F. Supp. 973, 976 (N.D. Ind. 1988) (observing "basic rule of law that if the representation … were legal opinions, then plaintiff could not maintain his action for fraud."). The utility of discovery, the availability of certain claims, a lawyer's assessment of their own ability in a particular practice area, these are all opinions that cannot support the fraud claims alleged in this case. Even so, Plaintiff fails to adequately allege how these instances proximately caused her damages. The alleged damages appear to be the amount of attorney fees taken from Plaintiff's settlement. As determined in the prior action and as discussed above, these fees were owed to Defendant for completed work.

Accordingly, Count Two, Count Four, and Count Five fail to meet the heightened pleading standard required for claims sounding in fraud.

### c. *Malicious Prosecution (Count Three)*

In Count Three, Plaintiff alleges that some of Defendant's actions as Plaintiff's attorney amount to malicious prosecution.

"The essence of malicious prosecution rests on the notion that the plaintiff . . . has been improperly subjected to legal process." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001) (citing *Ziobron v. Crawford*, 667 N.E.2d 202, 208 (Ind. Ct. App. 1996)). In Indiana, a malicious prosecution claim has four elements: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1250 (7th Cir. 2022) (quoting *Ingram v. Diamond Equip., Inc.*, 118 N.E.3d 1, 7 (Ind. Ct. App. 2018)). Although malicious prosecution is traditionally "intended to provide [civil] recourse to criminal defendants who have been wrongfully charged," there is a companion cause of action—wrongful use of civil proceedings—for "those who allege that civil proceedings have been maliciously initiated against them." *International Medical Group, Inc. v. American Arbitration Ass'n*, 149 F.Supp.2d 615, 630 (S.D. Ind. 2001) (citing *Mirka v. Fairfield of America, Inc.*, 627 N.E.2d 449, 451 n. 3 (Ind. Ct. App. 1994), and *Wong v. Tabor*, 422 N.E.2d 1279, 1281 n. 2 (Ind. Ct. App. 1981)). Since the elements of malicious prosecution and wrongful use of civil proceedings are substantially similar, *Wong*, 422 N.E.2d at 1281 n. 2, the Court will construe Plaintiff's claim as one for wrongful use of civil proceedings, which is more appropriate for this matter.

Even so, Plaintiff's claim fails at the first element. Under the heading for this claim, Plaintiff alleges that (1) Defendant destroyed a recording that Plaintiff made of a conversation between Plaintiff and a deposition witness, and (2) Defendant made misrepresentations to, and

concealed evidence from, Plaintiff. [DE 6, Pages 29–30]. Nowhere in the Amended Complaint does Plaintiff allege facts that Defendant initiated, or caused the initiation of, an action against her. On the contrary, the facts alleged describe an action that *Plaintiff* initiated. In initiating that action, Plaintiff *chose* Defendant to represent her. Defendant initiated nothing.

In bringing this claim, Plaintiff appears to rely on the *Wong* Court's statement that "[t]he crux of attorney liability for malicious prosecution is premised upon a finding that the attorney acted for some purpose other than aiding [their] client in securing a proper adjudication of [the client's] claim." 422 N.E.2d at 1287. Her reliance inappropriately considers that statement in vacuum, separated from the elements of malicious prosecution or wrongful use of civil proceedings—particularly the first element. That portion of *Wong* is more appropriately read as stating that "[t]he crux of attorney liability for malicious prosecution is premised upon a finding that," *in instituting the action against the plaintiff*, "the attorney acted for some purpose other than aiding [their] client in securing a proper adjudication of [the client's] claim."

Thus, Plaintiff's contention that Defendant destroyed a recording and misrepresented facts to her were "for some purpose other than" helping Plaintiff win the case is not appropriately presented in a claim for wrongful use of civil proceedings. Those allegations are best brought under different theories of recovery, which Plaintiff has already done in Counts One and Two. *Compare* [DE 6, ¶¶ 36, 58] and [DE 6, Page 29, ¶¶ 1–2]. For these reasons, Plaintiff's Count Three fails to state a claim upon which relief can be granted.

### d.  *Intentional Infliction of Emotional Distress (Count Six)*

In Count Six, Plaintiff brings a claim for intentional infliction of emotional distress.

In Indiana, intentional infliction of emotional distress arises when a defendant "(1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4)

severe emotional distress to another." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). These requirements are "rigorous." *Id.* (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)). Ultimately, "[i]t is the intent to harm the plaintiff emotionally" that constitutes the basis for the tort. *Id.*

First, she alleges that Defendant "used [Plaintiff's] medical records to inflict emotional distress upon her and create unnecessary litigation." [DE 6, Page 36]. Plaintiff goes on to say that Defendant refused "to curtail the subpoena for [Plaintiff's] medical records to torment [Plaintiff.]" [DE 6, Page 37]. These "deceptive actions" caused Plaintiff "extreme mental anguish." [*Id.*]. Even under the most charitable reading, Plaintiff's allegations fall short of stating a claim here. These statements are nothing more than a paper mâché of Defendant, unspecified medical records, and the elements of intentional infliction of emotional distress. There must be something more that makes it plausible that her own attorney would seek to intentionally inflict upon her *severe* emotional distress.

As pled, there is not enough for the Court to ascertain such a claim, and for that reason, Count Six fails to state a claim.

### e. *Deceptive Billing / Unjust Enrichment (Count Seven)*[8]

Under Count Seven, Plaintiff contends that Defendant unjustly enriched herself when she implemented deceptive billing practices against Plaintiff.

To recover for unjust enrichment in Indiana, a plaintiff must show that (1) she rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) she

---

[8] In the Amended Complaint, two claims are designated as "Count Six." *Compare* [DE 6, Page 36] (Intentional Infliction of Emotional Distress) *with* [DE 6, Page 38] (Deceptive Billing/Unjust Enrichment). To avoid confusion, the Court has renumbered this claim as Count Seven and the following claim, brought under Indiana's Crime Victim Relief Act, as Count Eight.

expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust. *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016) (citing *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012)). Generally, "[t]he existence of an express contract precludes a claim for unjust enrichment" since the doctrine is an equitable remedy created by common-law courts to "suppl[y] the fiction of the promise" in situations where no contract existed. *See Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 167–68 (Ind. Ct. App. 2012); *see also Clark v. Peoples Savings & Loan Ass'n of De Kalb Cnty.*, 46 N.E.2d 681, 171 (Ind. 1943).

In the Amended Complaint, Plaintiff contends that Defendant charged Plaintiff multiple times for the same work. [DE 6, Page 38]. She also alleges that when she refused to pay Defendant for services rendered, Defendant "threatened to quit[.]" [DE 6, Page 39]. Ultimately, when Defendant did withdraw her representation, she filed a lien on Plaintiff's settlement proceeds. [DE 6, Pages 40–41]. Plaintiff's unjust enrichment rests on Defendant's lien for unpaid attorney fees that was ultimately ordered to be taken out of the settlement proceeds.

As a threshold matter, the Court reiterates that these exact facts and issue were resolved by Judge DeGuilio in the prior litigation. Even so, Plaintiff's claim that Defendant was unjustly enriched fails to get out the starting blocks. Plaintiff refers to a "binding agreement" between her and Defendant multiple times in this part of the Amended Complaint. *See, e.g.*, [DE 6, Page 38]. Accordingly, there appears to be a contract that controls the resolution of billing discrepancies, which obviates the need for the equitable remedy of unjust enrichment. Moreover, Plaintiff fails to explain how Defendant's additional charges were duplicate. She merely contends that additional legal fees associated with conducting depositions and discovery were duplicative. As

has been the case with some of the other claims, this is not enough by itself. For these reasons, Plaintiff's claim for deceptive billing and unjust enrichment fails, and is therefore dismissed.

### f. Indiana Crime Victim Act (Count Eight)

With her final claim, Count Eight, Plaintiff alleges that Defendant is liable under Indiana's Crime Victim Relief Act ("CVRA"). Under § 1 of the CVRA, if a person suffers financial loss as a result of a crime under Indiana Code § 35-43 (offenses against property), § 35-42-3-3 (criminal confinement), § 35-42-3-4 (interference with custody), § 35-45-9 (criminal gang control), or § 35-46-10 (offenses involving critical infrastructure), the victim may bring a civil action against the person who caused the loss. IND. CODE § 34-24-3-1. The statute limits recovery to (1) three times the actual damages to the victim, (2) the costs of the action, (3) a reasonable attorney's fee, and (4) other costs associated with bringing the CVRA action, such as for travel and lost time. *Id.* Section 3 of the CVRA, also cited by Plaintiff, provides that a person seeking to recover under the CVRA may not recover both punitive damages and the amounts provided for under Section 1. IND. CODE § 34-24-3-3.

Given the above, Plaintiff's claim survives the motion to dismiss only if she adequately pled facts establishing that she suffered a monetary loss pursuant to a crime covered by the CVRA. She fails to do so. The Amended Complaint does not offer a qualifying crime, let alone any facts allowing the Court to discern one. It merely recites select portions of the CVRA. Notwithstanding the shortfall of sufficient factual matter as it relates to this claim, the Court cannot discern of *any* of the CVRA-covered crimes in any part of the Amended Complaint. Since no version of the Amended Complaint, or any potential revision, could appropriately plead facts establishing criminal confinement, interference with custody, criminal gang control, or offenses involving critical infrastructure, the Amended Complaint needs to include facts supporting that

18

Plaintiff suffered a loss in connection with an offense against her property. It does not. Though Plaintiff voices her regret in settling, as well as her dissatisfaction with the disbursement of funds, settlement funds are not the type of property covered by Indiana Code § 35-43.[9]

Plaintiff has failed to adequately plead any such claim, and therefore her claims against Defendant under the CVRA fail. The Court does not reach the question of whether § 3 of the CVRA applies.[10]

### III.    Motion for Leave to Amend the Complaint

The Court now reviews Plaintiff's Motion for Leave to Amend [DE 79], which is fully briefed. The Federal Rules of Civil Procedure provide two avenues for a party to amend its complaint before trial. First, a party may amend one time as a matter of course. Fed. R. Civ. P. 15(a)(1). Second, a party may only amend its pleading if the opposing party consents in writing or the court grants the amendment-seeking party leave to amend. Fed. R. Civ. P. 15(a)(2). "While leave to amend pleading should be freely given when justice requires, district courts have broad discretion to deny motions to amend in cases of undue delay, bad faith or dilatory motives, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice or futility." *Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 269 (7th Cir. 1994).

The instant motion for leave to amend is not the first time Plaintiff has amended, or tried to amend, the complaint in this matter. In fact, she was ordered to file a single, rule-compliant

---

[9] The offenses against property in Article 43, Chapter 1 are (1) arson, (2) criminal mischief or institutional criminal mischief, (3) cemetery mischief, (4) railroad mischief, (5) unlawful acts relating to caves, (6) tampering with a water supply, (7) altering historic property, (8) offense against intellectual property, (9) offense against computer users. IND. CODE § 35-43.

[10] Though the Court notes that even though § 3 bars recovery of both actual and punitive damages, Indiana courts have held that "punitive damages are not freestanding and that an award of actual damages is a prerequisite to an award of punitive damages." *CRIT Corp.*, 92 N.E.3d at 670 n. 4. Thus, without sufficiently pleading facts to establish a potential entitlement to actual damages, a request for punitive damages cannot lie.

Motion for Leave to Amend, the instant motion, after improperly attempting to amend her complaint several times.[11] [DE 77]. In spite of her many attempts at amending, Plaintiff's instant motion for leave to amend fails to show that her proposed amendments would not be futile. *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023).

"[F]utile repleadings include restating the same facts using different language, reasserting claims previously determined, failing to state a valid theory of liability, and the inability to survive a motion to dismiss[.]" *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted). Plaintiff's proposed amended complaint is futile because it merely recasts her Amended Complaint using different words. Defendant helpfully identifies myriad examples in her response brief. *E.g.*, *compare*, [DE 79-1, Page 4, ¶ 12] *with* [DE 6, Page 15, ¶ 57]; [DE 79-1, Page 5, ¶ 16] *with* [DE 6, Page 13, ¶ 50]; [DE 79-1, Page 6, ¶ 20] *with* [DE 6, Page 15, ¶ 58]. Since the Amended Complaint [DE 6] is dismissed for failure to state a claim, recasting those allegations using different words fails to save it.

## IV.    Additional Matters

In Magistrate Judge Martin's Order, he cautioned Plaintiff that "[c]ontinued irrelevant and excessive filings will be stricken, and may result in sanctions." [DE 77]. Plaintiff ignored this warning. Following the Motion for Leave to Amend [DE 79] that she was ordered to file, Plaintiff made *five* additional filings: (1) Pleading Special Matters [DE 86], (2) Plaintiff's Pleading Under Rule 8(A) for Relief [DE 87], (3) Motion for Sanctions Under Rule 11 [DE 89], (4) Motion for Clerk's Entry of Default as to Andrea Ciobanu [DE 90], and (5) Motion for Default Judgment [DE 94]. These filings not only contradict a court order, but some of the filings, such as those relating to Federal Rule of Civil Procedure 55, are frivolous. Such filings

---

[11] Plaintiff already amended as a matter of course. Fed. R. Civ. P. 15(a)(1). She filed her initial complaint on May 15, 2023. [DE 1]. She filed her amended compliant on June 5, 2023. [DE 6].

are seemingly beyond the pale of the leniency afforded to pro se litigants, as they appear vexatious. They also turn the docket into a cobbled mess, which unnecessarily expends judicial resources and delays the adjudication of the matter itself.

In light of Plaintiff's actions, the Court would be remiss to not acknowledge Defendant's request for attorney fees. If the Court were to reach the issues, it would have found the motion compelling. Given the myriad of filings in this matter, the attempts to relitigate prior state court matters (both via the instant matter and the matter giving rise to this one), and Plaintiff's flouting of the federal rules of civil procedure, an adequate record exists for sanctions. However, in light of the motion to dismiss being granted, Defendant's motion for fees is denied as moot and the Court does not reach a decision on it.  Finally, if Plaintiff chooses to proceed pro se in this Court, which she has the right to do, she *must* follow the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Indiana, or the Court may impose sanctions.

### Conclusion

Accordingly, Defendant's Motion to Dismiss [DE 14] is **GRANTED** in its entirety; Plaintiff's Amended Complaint [DE 6] is **DISMISSED**.

Plaintiff's Motion to Amend the First Amended Complaint [DE 79] is **DENIED** as futile.

Consequently, all other pending, unresolved motions are **DENIED AS MOOT**; this includes, but is not limited to, the following: Plaintiff's Motion for Clerk's Entry of Default [DE 75]; Plaintiff's Pleading Special Matters [DE 86]; Plaintiff's Pleading Under Rule 8(A) for Relief [DE 87]; Defendant's Motion to Strike and Motion and Request for Sanctions Against Plaintiff [DE 88]; Plaintiff's Motion for Sanctions under Rule 11 [DE 89]; Plaintiff's Motion for Clerk's Entry of Default as to Andrea Ciobana [sic] [DE 90]; and Plaintiff's Motion for Default Judgment as to Andrea Ciobana [sic] [DE 94].

The case is hereby **DISMISSED WITH PREJUDICE**, in its entirety.

SO ORDERED.

ENTERED: February 25, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court